UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-14004-CR-MOORE/LYNCH

UNITED STATES OF AMERICA

v.

GEORGE JEFFREY BATY,

Defendant.
_____/



FILED by _____ D.C.

FEB 24 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

# **FACTUAL BASIS FOR CHANGE OF PLEA**

On December 15, 2009, in St. Lucie County, in the Southern District of Florida, a buy-bust operation was organized utilizing a DEA confidential source. After an operational briefing was conducted, officers met with CS at a predetermined location. The CS was searched prior to and after the transaction for any illegal contraband, drugs and/or monies. None were found. The residence of the CS was equipped with video surveillance for the purpose of recording the transaction. The CS was equipped with a listening device for the safety of the CS. DEA Agent Matschner issued the CS six hundred and fifty dollars of official advanced funds (OAF) for the purchase of crack cocaine. SA Roane and SA Matschner were assigned to conduct surveillance of the CS and advised the take down unit, who were stationed in close proximity to the residence, when the transaction was completed.

At approximately 1745 hours, the CS made a telephone call to co-defendant Rollie GILLIAM. GILLIAM instructed the CS to meet him at the CS's residence. GILLIAM told the CS to call him (GILLIAM) back when the CS arrived at the CS's residence. The CS was observed traveling from the predetermined location to the CS's residence. The CS called GILLIAM and the CS advised GILLIAM that he/she was at the residence. GILLIAM replied that "he was coming."

At approximately 1810 hours, GILLIAM was observed parking in the driveway of the residence. GILLIAM exited a black Honda Accord and entered the residence. GILLIAM and the CS were observed and heard talking to one another. The CS told GILLIAM that the CS only had six hundred and fifty dollars for the purchase. GILLIAM requested the CS to front the money and the CS declined. GILLIAM told the CS that he (GILLIAM) had to go "drop it." GILLIAM asked the CS if he understood what "dropping it" meant and the CS said, "yes you have to cut it." GILLIAM said, "No I have to cook it up." GILLIAM then explained to the CS that he (GILLIAM) would make sure the "shit" would be good because his (GILLIAM's) stuff was "like fire." GILLIAM kept telling the CS to give him the money but the CS would not release the money, as instructed by agents. GILLIAM advised the CS that he (GILLIAM) would return shortly with the dope. GILLIAM was observed leaving the residence. The CS made

contact with SA Matschner and advised SA Matschner that GILLIAM would be back in approximately one hour.

At approximately 1900 hours, GILLIAM called the CS and advised that he (GILLIAM) was on his way. A short time later, a blue medium sized vehicle pulled into the driveway of the residence. A black male, later identified as George BATY, was observed entering the residence. BATY handed the CS a small plastic bag containing an off white substance. The CS handed BATY $640.00 OAF and explained to BATY that the CS had purchased something to eat and was short $10.00. While engaged in conversation, BATY received a telephone call from GILLIAM. GILLIAM called to verify whether BATY was okay. BATY told GILLIAM, "What's up partner . . . yeah, I'm straight." When asked by the CS if the crack "would weigh," BATY said yes and added, "there may even be some extra . . . we do take care of our customers." The signal was given and the takedown unit moved in and apprehended BATY.

Once BATY was secured, SA Matschner advised BATY of his Miranda Rights and BATY agreed to speak with law enforcement. BATY advised agents that GILLIAM arrived at his residence and asked BATY to transport some crack cocaine for $20.00. BATY advised agents that he had full knowledge of the crack cocaine and agreed to transport the crack cocaine for GILLIAM. BATY agreed to help agents and escorted the takedown unit to BATY'S residence located at 2705 Ave S, where GILLIAM was waiting for BATY to return with GILLIAM'S money.

The off-white substance was taken into custody by Det. Evans. The substance field-tested positive for the presence of cocaine. According to the Indian River Crime Laboratory, the cocaine base weighed 6.7 grams.

JEFFREY H. SLOMAN
UNITED STATES ATTORNEY

Date: 2/24/10    By: _____
                     RINKU TRIBUIANI
                     ASSISTANT UNITED STATES ATTORNEY

Date: 2/24/10    By: _____
                     FLETCHER PEACOCK
                     ATTORNEY FOR DEFENDANT

Date: 2/24/10    By: _____
                     GEORGE JEFFREY BATY
                     DEFENDANT

2